UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| JON HANNA AND HANNA LAW FIRM, P.C., | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 1:21-cv-00074 |
| RAHUL MALHOTRA, | § § § | |
| *Defendant*. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT FOR
DECLARATORY JUDGMENT, TEMPORARY RESTRAINING
ORDER, AND INJUNCTIVE RELIEF**

Plaintiffs Jon Hanna and Hanna Law Firm, P.C. seek declaratory judgment and injunctive relief against Rahul Malhotra based on the following allegations:

**I. NATURE OF THE ACTION**

1. This lawsuit concerns the theft of a law firm's telephone number and prospective clients. Jon Hanna is a second generation, 38-year lawyer in West Texas. Hanna employed Rahul Malhotra—who resides in Canada but has a Texas law license—in his law firm. Malhotra was deported to Canada after pleading guilty to a federal crime relating to his application for American residency.

2. Working remotely from Canada, Malhotra now works as a lawyer at another Texas law firm. Falsely claiming that he was Hanna's partner, Malhotra has stolen Hanna's telephone number in an effort to divert current and prospective clients to his new practice.

**II. THE PARTIES**

3. Plaintiff Jon Hanna is an individual resident of Taylor County, Texas.

4. Hanna Law Firm, P.C. is a Texas professional corporation with its principal place

1

of business in Ector County, Texas.

5.      Defendant Raul Malhotra is an individual resident of Canada. Under rule 4(f) of the Federal Rules of Civil Procedure, Malhotra may be served with process at 1355 Willowdown Road, Oakville, Ontario L61X2, Canada.

### III. JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. § 1332(a)(2) because it is a suit between an American citizen and company, and a foreign citizen and because the value of the right to be enforced exceeds $75,000.

7.      This Court has personal jurisdiction over Malhotra because he purposefully availed himself of benefits and protections of Texas law by establishing minimum contacts through his practice of law in Texas and the claims at issue arise from or relate to that purposeful availment; because he intentionally targeted the Texas market; because he intentionally targeted Texas in internet contacts; because he has continuous and systematic contacts with Texas; and because the exercise of personal jurisdiction over him is consistent both with due process and traditional notions of fair play and substantial justice.

8.      Venue is proper in this Court under 28 U.S.C. § 1391(c)(3) because Malhotra is a non-resident of the United States who can be sued in any district, and because a substantial part of the events or omissions giving rise to the claims occurred in this district and division.

### IV. BACKGROUND FACTS

9.      Jon Hanna is a second-generation Texas lawyer who has practiced law in West Texas for 38 years, first in partnership with his father and later with his own firm. Throughout his four decades of legal practice, Hanna has practiced principally in the area of personal-injury litigation. He is and always has been the sole owner of Hanna Law Firm, PC.

10. In 2001, Hanna met fellow attorney Rahul Malhotra while working on a wrongful-death lawsuit. Malhotra and Hanna became friends and occasionally represented clients under joint-representation agreements over the ensuing years.

11. Malhotra is a Canadian national born in India. He attended law school in Texas on a student visa and received his Texas law license in 1996.

12. To remain in the United States and work as a lawyer, Malhotra needed a TN Visa—a special, non-immigrant visa created under NAFTA for certain professionals who are Canadian citizens or Mexican nationals. But—critically for this case—a professional in the United States under a TN Visa may not be self-employed or be the sole or controlling shareholder of any business.

13. Malhotra obtained a TN Visa and began working as a lawyer for Jesse Herrera at the Herrera Law Firm in Odessa in 1997. Three years later, in 2000, Malhotra incorporated the Malhotra Law Firm and purchased Herrera's practice and building. Herrera financed that purchase in part and retained a controlling interest in Malhotra's new firm as security.

14. In 2005, Malhotra violated the terms of his TN Visa by becoming the sole owner of the Malhotra Law Firm after paying off his debt to Herrera.

15. The following year, Malhotra applied for permanent residency in the United States. In evaluating that application, U.S. Citizenship and Immigration Services (USCIS) investigated Malhotra's visa compliance and requested written verification of Malhotra's employee status.

16. In response to this request, Malhotra persuaded Herrera to conspire with him to mislead the federal government; Malhotra drafted a letter for Herrera to sign stating that Malhotra "was/is employed as an attorney-at-law by the Malhotra Law Firm, of which I am a majority shareholder, from January 31, 2001 to present." Despite the obvious falsity of the letter, and its

attendant effect on the legality of Malhotra's continued presence in the United States, Herrera signed the letter.

17. The ruse failed miserably.

18. Suspecting duplicity, USCIS referred Malhotra's application to Homeland Security. When Homeland Security interviewed Herrera, he admitted—

- he did not write the letter;

- he did not own—fully or partially—the Malhotra Law Firm;

- other than collecting purchase payments from Malhotra he had engaged in no business dealings of any type with Malhotra or the Malhotra Law Firm since selling his practice and building;

- Malhotra drafted the letter for the purpose of deceiving the government and supporting his residency application; and

- he signed the letter because Malhotra was his friend and he wanted to help him.

19. In December 2015, the federal government indicted Malhotra for fraud, misuse of immigration documents, and making false statements in his application for residency.

20. Malhotra informed Hanna of these criminal charges. At Malhotra's request, Hanna became "of counsel" to Malhotra's firm to ensure continuity of representation for clients if Malhotra's law license was suspended or revoked. Malhotra and Hanna also began discussing the possibility of Malhotra working for Hanna as a paralegal in that event.

21. In May 2016, at the direction of Malhotra's immigration attorney Hanna and Malhotra each filed form I-140s, a federal immigration form required for USCIS to classify an alien as eligible for an immigrant visa based on employment. Hanna filed as the potential employer and Malhotra as the applicant. On their respective forms, Hanna and Malhotra each confirmed that Malhotra did not have any ownership interest in Hanna's law firm. Both men answered "No" to

the following question:

> Is the employer a closely held corporation, partnership, or sole proprietorship in which the alien has an ownership interest, or is there a familial relationship between the owners, stockholders, partners, corporate officers, incorporators, or partners, and the alien?

22. In August 2016, Malhotra pleaded guilty to making a false statement under 18 U.S.C. § 1001(a)(2).

23. In March 2017, the federal court entered judgment based on Malhotra's plea, ordering him to pay a fine and placing him on community supervision for five years.

24. After Malhotra's sentencing, he continued to practice law out of his Odessa and Midland offices. A week later, Malhotra was arrested in Midland and taken to a detention center in El Paso. The following month, he was denied bond and continuously held until he accepted a voluntary deportation to Canada.

25. The Texas Board of Disciplinary Appeals suspended Malhotra's Texas law license indefinitely effective August 1, 2017.

26. As a result of his conviction, deportation, and suspension, Malhotra arranged for Hanna to assume representation of many of his clients. Hanna had a dormant corporate entity—Hanna Law Firm, P.C.—that he intended to revive and use for the representation of Malhotra's clients. In the interim, Malhotra's clients signed contracts with "Jon Hanna, Attorney." The State of Texas reinstated Hanna Law Firm, PC's charter on July 28, 2017.

27. Hanna notified all the former Malhotra clients of the suspension and informed them that the Malhotra Law Firm was now Hanna Law Firm, PC, and that Malhotra was employed by that firm as a paralegal and working remotely from Canada. In August 2017, plaintiffs also assumed ownership of Malhotra's account with Jive Communications and the associated telephone number of 432-580-HURT. Through the date of this complaint, the charge for that account was

billed to plaintiffs and they paid it.

28. The State Bar of Texas reinstated Malhotra's law license on March 23, 2019. From then until he resigned on February 28, 2021, Hanna Law Firm employed Malhotra as a contract attorney. During that time, Hanna Law Firm listed Malhotra as an employee on the firm's professional-liability insurance policy and paid him as an independent contractor (evidencing that payment by a form 1099).

29. In March 2021, Malhotra went to work (remotely from Canada) as an attorney for another personal-injury law firm in Texas. On March 24, 2021, Malhotra informed counsel for Plaintiffs that he intended to use the phone number on April 1. On March 26, Hanna spoke to LogMeIn, the phone service provider, to confirm that Hanna Law Firm was the owner of the phone number and the client for billing purposes.

30. On April 1, 2021, plaintiffs were locked out of the LogMeIn phone system and the phone number plaintiffs had been using and paying for since August 2017 was transferred to Malhotra's new firm. That firm already has placed television advertisements using plaintiffs' telephone number. On April 1, plaintiffs received their phone bill from LogMeIn, and it showed Hanna Law Firm as the owner of the phone number and the client for billing purposes. Hanna Law Firm paid the phone bill for April 2021.

31. On April 2, 2021, the phone number and SMS, but not VOIP, were "ported" by AT&T to the Hanna Law Firm. Hanna Law Firm once again had use of the phone number.

32. On April 7, 2021, the phone number was routed back to Malhotra and his new employer.

33. On April 9, 2021, AT&T again "ported" the phone number to the Hanna Law Firm.

34. On April 12, 2021, around 3:45 P.M., the phone number was routed back to

Malhotra and his new employer—thereby necessitating this complaint for injunctive relief.

35.     At no time did Malhotra have management authority over the Hanna Law Firm, the right to control its business or the right to bind the Hanna Law Firm.

36.     In a June 2020 Malhotra sent a letter to the Law Society of Ontario in a proceeding where he applied to be licensed to practice law in Canada admitting he simply assisted clients and lawyers at the Hanna Law Firm:

> "Since my departure from Texas, I have maintained a close connection to my old law firm. During the period of my suspension, I continued to work remotely as a paralegal. Since the reinstatement of my license, I have continued to work as a lawyer but only on Texas cases. Utilizing my expertise and experience, I assist lawyers and clients of the firm remotely in both open cases that predate my departure and new cases. My colleagues, both at the firm and on opposing sides, with whom I have had dealing, as well as the clients I represent, can attest to my continuing good character and reputation as a lawyer."

37.     In addition to the above, Malhotra—with the help of former Hanna Law Firm employee Arlette Garcia-Ornelas—has actively solicited clients of the Hanna Law Firm. These clients have valid existing contracts with Hanna Law Firm and have been enticed to sign new contracts with Malhotra. In this manner, Malhotra has tortiously interfered with at least 15 of the Hanna Law Firm's client relationships with three incidents on April 15.  This also engenders ethical issues in signing clients to a second contingent-fee contract if there has not been an explanation that the clients could be required to pay contingent fees to two lawyers.

## V. CAUSE OF ACTION: DECLARATORY JUDGMENT

38.     Plaintiffs seek declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202. An actual, substantial case or controversy exists between the parties, who have adverse legal interests of sufficient immediacy and reality to warrant relief.

39. Specifically, plaintiffs seek a declaration that—

a) Hanna and Malhotra never formed any partnership;

b) Malhotra never was a partner in the Hanna Law Firm,

c) Malhotra never was anything more than an employee of the Hanna Law Firm, and

d) the Hanna Law Firm is the sole rightful owner of the telephone number 432-580-HURT.

40. Plaintiffs seek their reasonable and necessary attorney's fees and costs because those fees would be recoverable under Texas law governing declaratory judgments. *Titan Holdings Syndicate, Inc. v. City of Keene*, 898 F.2d 265, 273-74 (1st Cir. 1990); *see* 28 U.S.C. § 2202.

## VI. APPLICATION FOR TEMPORARY RESTRAINING ORDER

41. This application is supported by the attached affidavit of Jon Hanna, which is incorporated by reference.

42. If Malhotra is not immediately restrained from continuing to use Hanna Law Firm's telephone number and soliciting plaintiffs' clients, plaintiffs are likely to suffer immediate and irreparable injury. No adequate remedy at law exists to address this immediate and irreparable injury, because the Hanna Law Firm has owned and used the phone number since August 2017. As a result, the use of the phone number by Malhotra will cause confusion to both existing and potential clients of the Hanna Law Firm. Malhotra is using the phone number to advertise his services for another law firm with the intent of diverting actual and potential clients from the Hanna Law Firm to Malhotra's new employer.

43. Plaintiffs have demonstrated a likelihood of success on the merits, because the Hanna Law Firm has paid for and used the phone number continuously since 2017. Further, Malhotra has never been a partner with Hanna in the Hanna Law Firm or an owner of the firm, and thus lacks any legal right to the phone number.

44. The balance of hardships favors granting injunctive relief. The injury faced by plaintiffs far outweighs any injury that Malhotra would sustain by the requested TRO and injunction. Because the Hanna Law Firm has used the phone number since 2017, both actual and potential clients know that Hanna and employees of the firm can be reached at 432-580-4878. But now, when actual and potential clients dial the number, they reach a different law firm. It would be much easier for Malhotra to utilize a different phone number than for the Hanna Law Firm to change the phone number that it has paid for and used since 2017.

45. The requested injunction would not adversely affect public policy or the public interest, because actual and potential clients of the Hanna Law Firm are best served by being able to contact the lawyer they retained to handle their legal matter by the phone number that they know and not be confused by dialing the number and being routed to another law firm.

46. Plaintiffs will post any bond this Court deems necessary and appropriate for issuance of the order.

47. For these reasons, plaintiffs respectfully request a temporary restraining order immediately restraining Malhotra (including his agents, representatives, and all other persons in concert or participation with him, including any officer, partner, manager, agent, representative or employee of his current employer who received actual notice of the order by personal service or otherwise) from using telephone number 432-580-4878 (HURT) for any purpose and from contacting existing clients of the Hanna Law Firm, P.C., whether orally or in writing, electronically or otherwise.

## VII. APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIONS

48. Plaintiffs request that this Court set their application for preliminary injunction for a hearing within 14 days after a temporary restraining order is entered.

49.     Plaintiffs further request that the Court set their application for a permanent injunction for a full trial on the merits and, after the trial, issue the requested permanent injunction.

## VIII. JURY DEMAND

**50**.    Plaintiffs demand trial by jury of all issues in this case.

## IX. PRAYER FOR RELIEF

Plaintiffs, Jon Hanna and the Hanna Law Firm, P.C. pray that;

1. Defendant Rahul Malhotra be summoned to appear and answer this complaint;

2. This Court grant a temporary restraining order, a preliminary injunction and a permanent injunction as requested;

3. This Court grant declaratory relief as requested;

4. Plaintiffs recover their reasonable attorneys' fees for trial in this Court and conditional awards of attorneys' fees for all appeals of this case; and

5. Plaintiffs recover such other and further relief, both general and special, at law or in equity, to which they may show themselves justly entitled.

Dated April 16, 2021.

> Respectfully submitted,
>
> **Johnston Tobey Baruch, P.C.**
>
> By: */s/ Robert Tobey*
> Robert L. Tobey
> State Bar No. 20082975
> robert@jtlaw.com
> Randy Johnston
> State Bar No. 10834400
> randy@jtlaw.com
> Chad Baruch
> State Bar No. 01864300
> chad@jtlaw.com
> Coyt Johnston, Jr.
> State Bar No. 24058772

coyt@jtlaw.com  
12377 Merit Drive, Suite 880  
Dallas, Texas 75251  
Telephone: (214) 741-6260  
Facsimile: (214) 741-6248  

*Attorneys for Plaintiffs*